MATTI, APPELLANT, v. CHICAGO, MILWAUKEE & ST. PAUL RY. CO., RESPONDENT.

(No. 3,943.)

(Submitted September 19, 1918.   Decided November 12, 1918.)

[176 Pac. 154.]

*Personal Injuries—Master and Servant—Railroads—Federal Employers' Liability Act—Interstate Commerce—Burden of Proof—Res Ipsa Loquitur.*

Personal Injuries—*Res Ipsa Loquitur*—Inapplicability of Doctrine.
1.   The doctrine of *res ipsa loquitur* held inapplicable in an action by a laborer injured by the fall of a brick upon his foot while engaged in moving a wheelbarrow load of bricks from a freight-car to a building in course of construction.

[As to accident, as evidence of negligence, see notes in 6 **Am. St. Rep.** 792; 20 **Am. St. Rep.** 490; 30 **Am. St. Rep.** 736; **Ann. Cas.** 1914D, 908.]

Same—Federal Employers' Liability Act—Interstate Commerce—Burden of Proof.

2. In order to make out a *prima facie* case, where recovery for a personal injury is sought under the federal Employers' Liability Act, plaintiff has the burden of proving that at the time of the accident he was employed in interstate commerce.

Same—Federal Employers' Liability Act—Construction—Federal Question.

3. The construction of the federal Employers' Liability Act involves a federal question, with respect to which the decisions of the United States supreme court are conclusive upon state courts.

Same—Evidence—Insufficiency.

4. *Held*, that a laborer employed in loading bricks from a railroad car into a wheelbarrow and moving them to a freight terminal being erected by defendant railway company for use in connection with a line of road in course of construction but not completed and not put to use until several months after the accident, was not engaged in interstate commerce and was therefore not entitled to recover under the federal Employers' Liability Act for an injury to his foot caused by bricks falling upon it.

*Appeal from District Court, Fergus County; Roy E. Ayers, Judge.*

Action by John Matti against the Chicago, Milwaukee & St. Paul Railway Company. Judgment of nonsuit. Plaintiff appeals from an order denying him a new trial. Affirmed.

*Mr. E. K. Cheadle,* for Appellant, submitted a brief and argued the cause orally.

*Mr. Chas. J. Marshall,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In October, 1913, the Chicago, Milwaukee & St. Paul Railway Company owned and operated, as a part of its system, a branch line from Harlowtown to Lewistown and handled all its freight at the Lewistown terminal, at what is designated "the old warehouse." The company was then engaged in constructing a new line of road from Lewistown to Great Falls, and was likewise building a new warehouse in Lewistown, several blocks away from the old one. The new warehouse was completed and put

to use in January, 1914, and the new line was completed several months later.    The company had moved a carload of bricks from [1] a brick manufacturing plant in Lewistown to a point on a spur-track near the new building, and plaintiff was employed to take the bricks from the car to the building.    Another employee of the company worked inside the car, carrying the bricks and piling them in the car door for plaintiff to place in a wheelbarrow and remove to the building.    While these men were thus engaged on October 11, 1913, some bricks fell upon plaintiff's foot, causing injury.    He brought this action to recover damages and alleged that the company furnished the workman within the car with a brick-carrying device which was out of repair and dangerous; that the company knew, but plaintiff did not know, that the device was in a defective condition; and that the company, through its employee who was using the device, negligently permitted bricks to fall from it upon plaintiff, causing the injury.

. To bring himself within the federal Employers' Liability Act and avoid the defense of fellow-servant's negligence plaintiff alleged that, at the time of the injury, the company was engaged in interstate commerce and that he was employed in such commerce.    This last allegation was put in issue, and the company pleaded the defense of fellow-servant's negligence.    Upon the trial, the court granted a motion for nonsuit, and plaintiff appealed from an order denying him a new trial.

There was not any evidence offered to sustain the allegation that the carrying device was out of repair, and if it be conceded, for the purpose of this appeal, that negligence was shown, it was the negligence of the fellow-servant.    The circumstances do not admit of the application of the maxim, "*Res ipsa loquitur.*"

In order to make out a *prima facie* case, it was incumbent [2] upon the plaintiff to prove that he was employed in interstate commerce at the time he was injured.    The federal Employers' Liability Act (Act April 22, 1908, Chap. 149, sec. 1, 35 Stat. 65 with the amendment thereto (36 Stat. 291 [U. S. Comp. Stats. 1911, Supp., p. 1324]) provides: "That every common

carrier by railroad while engaging in commerce between any of the several states * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce."

Appellant relies upon the decision of the supreme court of Utah in *Grow* v. *Oregon S. L. Co.,* 44 Utah, 160, Ann. Cas. 1915B, 481, 138 Pac. 398; but in the later case of *Perez* v. *Union Pac. R. Co.,* 173 Pac. 236, the same court, after reviewing the later federal cases and adverting to the fact that the *Grow Case* was decided by a divided court, said: "Whether the majority opinion would stand to-day in the light of more recent opinions by the United States supreme court is at least a debatable question." The construction of the Act of Congress above involves a federal [3]    question with respect to which the decisions of the supreme court of the United States are conclusive upon this court.

In *Pedersen* v. *Delaware, L. & W. R. R. Co.,* 229 U. S. 146, Ann. Cas. 1914C, 153, 57 L. Ed. 1125, 33 Sup. Ct. Rep. 648, 3 N. C. C. A. 779, the court determined that an employee engaged in bringing materials for the repair of a bridge actually in use as a part of the company's line for the transportation of interstate commerce was engaged in such commerce, but emphasis was laid upon the fact that the bridge was actually in use in interstate commerce, and that work of keeping it in repair was so closely related to such commerce as to be, in practice and in legal contemplation, a part of it.   The court said: "The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged?   (Citing cases.)   Of course, we are not here concerned with the construction of tracks, bridges, engines or cars which have not as yet become instrumentalities in such commerce, but only with the work of maintaining them in proper condition after they have become such instrumentalities and during their use as such."

In *Illinois Cent. R. R.* v. *Behrens,* 233 U. S. 473, Ann. Cas. 1914C, 163, 58 L. Ed. 1051, 34 Sup. Ct. Rep. 646, 10 N. C. C. A. 153, it was held that a member of the switching crew engaged in moving cars loaded with intrastate freight, from one part of New

Orleans to another, was not engaged in interstate commerce, though the company handled interstate shipments and plaintiff at other times moved cars loaded with such freight. The court referred to the language of the Act above, and said: "It is clear that Congress intended to confine its action to injuries occurring when the particular service in which the employee is engaged is a part of interstate commerce."

In *Delaware, L. & W. R. R. Co.* v. *Yurkonis,* 238 U. S. 439, 59 L. Ed. 1397, 35 Sup. Ct. Rep. 902, it was held that an employee engaged in one of the company's collieries mining coal for use upon locomotives engaged in interstate commerce was not himself engaged in such commerce.

In *Shanks* v. *Delaware, L. & W. R. R. Co.,* 239 U. S. 556, L. R. A. 1916C, 797, 60 L. Ed. 436, 36 Sup. Ct. Rep. 188, it was held that a machinist who was injured while moving an overhead countershaft, through which power was communicated to machinery for repairing locomotives used in interstate commerce, was not himself engaged in such commerce. The court said: "Having in mind the nature and usual course of the business to which the Act relates and the evident purpose of Congress in adopting the Act, we think it speaks of interstate commerce, not in a technical legal sense, but in a practical one better suited to the occasion (see *Swift & Co.* v. *United States,* 196 U. S. 375, 398 [49 L. Ed. 518, 25 Sup. Ct. Rep. 276]) and that the true test of employment in such commerce in the sense intended is: Was the employee at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it?"

In *Chicago, B. & Q. R. R.* v. *Harrington,* 241 U. S. 177, 60 L. Ed. 941, 36 Sup. Ct. Rep. 517, 11 N. C. C. A. 992, it was held that a member of a switching crew engaged in moving cars of coal from a storage track in Kansas City to coal-bins in another part of the city was not engaged in interstate commerce. It was held to be immaterial whether the coal was brought from points within or without the state of Missouri, and the test applied in the *Shanks Case* above was reiterated, and the court observed:

"Manifestly, there was no such close or direct relation to inter-state transportation in the taking of the coal to the coal-chutes."

Notwithstanding the difference in the facts, the general principles announced above were deemed controlling in each of the following cases involving facts analogous to those presented in the present appeal:

In *Raymond* v. *Chicago, M. & St. P. Ry. Co.*, 243 U. S. 43, 61 L. Ed. 583, 37 Sup. Ct. Rep. 268, there were presented these facts: The Milwaukee main line had been completed from Chicago to Seattle, and had been employed for several years in interstate commerce. In order to shorten the line, lessen the grade, and make more efficient its service, the company commenced cutting a tunnel through the mountain between Horrick's Spur and Rockdale, Washington, with the intention of using the tunnel, when completed, for the main line. Raymond was employed as a laborer in the tunnel work and was injured while in the discharge of his duties and before the tunnel was completed or in use. The court said: "Considering the suit as based upon the federal Employers' Liability Act, it is certain under recent decisions of this court, whatever doubt may have existed in the minds of some at the time the judgment below was rendered, that under the facts as alleged Raymond and the railway company were not engaged in interstate commerce at the time the injuries were suffered, and consequently no cause of action was alleged under the Act"—citing the *Yurkonis* and *Harrington Cases* above.

At the same term, the court decided the case of *New York Cent. R. Co.* v. *White*, 243 U. S. 188, Ann. Cas. 1917D, 629, L. R. A. 1917D, 1, 61 L. Ed. 667, 37 Sup. Ct. Rep. 247. The railroad company, an interstate carrier, was engaged in building a new station and new tracks upon its line. White was employed by it as a watchman to guard tools and materials intended to be used in the new construction work, and while so engaged was killed. The action was brought by his surviving wife. The supreme court disposed of the case as follows: "The first point assumes that the deceased was employed in interstate commerce at the

time he received the fatal injuries.   *   *   *   The admitted fact
that the new station and tracks were designed for use, when
finished, in interstate commerce, does not bring the case within
the federal Act.   The test is: 'Was the employee at the time of
the injury engaged in interstate transportation or in work so
closely related to it as to be practically a part of it?'   (*Shanks*
v. *Delaware, Lackawanna & Western R. R. Co.*, 239 U. S. 556,
558 [L. R. A. 1916C, 797, 60 L. Ed. 436, 36 Sup. Ct. Rep. 188].)
Decedent's work bore no direct relation to interstate transporta-
tion, and had to do solely with construction work, which is
clearly distinguishable, as was pointed out in *Pedersen* v. *Dela-
ware, Lackawanna & Western R. R. Co.*, 229 U. S. 146, 152
[Ann. Cas. 1914C, 153, 57 L. Ed. 1125, 33 Sup. Ct. Rep. 648, 3
N. C. C. A. 779].   And see *Chicago, Burlington & Quincy R. R.
Co.* v. *Harrington*, 241 U. S. 177, 180 [60 L. Ed. 941, 36 Sup. Ct.
Rep. 517, 11 N. C. C. A. 992]; *Raymond* v. *Chicago, Milwaukee
& St. Paul Ry. Co.*, this day decided, *ante* [243 U. S.], p. 43, [61
L. Ed. 583, 37 Sup. Ct. Rep. 268].   The first point therefore is
without basis in fact.''

Three years prior to the decision in the last case above, a some-
what similar case was before the circuit court of appeals for the
eighth circuit.   (*Bravis* v. *Chicago, M. & St. P. Ry. Co.*, 217
Fed. 234, 133 C. C. A. 228.)   The railway company, an inter-
state carrier, was engaged in straightening its main-line track
between Hopkins, Minnesota, and Aberdeen, South Dakota, and
to that end was building a cut-off near Chanhassen, Minnesota,
to avoid a curve.   The new roadbed was practically completed,
but the rails were not laid.   A concrete bridge was being in-
stalled as a part of the cut-off.   Bravis was employed by the
company to work on the bridge and, while so employed, was
injured.   The court held that he was not employed in interstate
commerce, and said: ''But there were no rails on the roadbed on
this cut-off.   It never had been used, it was not then used, and
until it should be ironed it could not be used, by the defendant
in interstate commerce.   The mere fact that it was the purpose
and intention so to use it at some future time did not make it

an instrumentality of interstate commerce. That purpose and intention might be changed, and it might never be used in interstate commerce, or at all. The argument that the building of the cut-off was the mere correction or prevention of a defect or insufficiency of the defendant's instrumentality for conducting interstate commerce is too remote and inconsequential to convince.''

The decisions in the foregoing cases determine that plaintiff [4] was not employed in interstate commerce at the time he was injured, and therefore he was not entitled to recover upon his own showing.

The order is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY concurs.