## PEREZ v. UNION PAC. R. CO.

No. 1368.   Decided April 20, 1918.   On Application for rehearing, May 23, 1918.   (173 Pac. 236.)

1. MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE—FELLOW SERVANTS. Where plaintiff, a section hand, is helping to lift one end of an old rail, and the men lifting the other end, without warning to plaintiff, dropped their end of the rail, thereby injuring plaintiff, plaintiff is precluded by the fellow-servant doctrine from recovering against railroad employer. (Page 290.)

2. COMMERCE—"INTERSTATE COMMERCE"—RAILROADS. A carrier generally engaged in interstate commerce is not necessarily so engaged at all times or in respect to every instrumentality employed in its business, and whether an employee of such carrier is engaged in interstate commerce at the time of his injury depends upon whether

the work he is doing at the time of the injury is interstate commerce, or so closely connected therewith as to become a part thereof. (Page 291.)

3. COMMERCE—''INTERSTATE COMMERCE''—RAILROAD WORK. A railroad employee who helps to remove old discarded rails from the right of way after other employees have detached such rails from the track is not engaged in interstate commerce, within federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1916, sections 8657-8665.]). (Page 291.)

4. COMMERCE—''INTERSTATE COMMERCE''—RAILROAD REPAIR WORK. A railroad employee repairing a track used by trains engaged in interstate commerce is engaged in interstate commerce under Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. 1916, sections 8657-8665) making carriers engaged in interstate commerce liable for injuries to their employees engaged in such commerce where due to negligence of the carrier. (Page 292.)

5. COMMERCE—''INTERSTATE COMMERCE''—CHARACTER OF USE OF APPLIANCES. Under the federal Employers Liability Act, a carrier is liable only in case both carrier and employee are engaged in interstate commerce as to the instrumentality employed at the time of the injury. (Page 297.)

6. MASTER AND SERVANT—INJURY TO EMPLOYEE—NEGLIGENCE—FAILURE TO SUPPLY SUFFICIENT MEN. Whether or not a railway company negligently failed to furnish a sufficient number of men to lift discarded rails being removed from the track to a scrap pile where the men lifting one end were unable, because of its weight, to handle the rail and for that reason dropped their end and injured one of the men at the other end, is a question available at common-law and proper to be considered and disposed of in this action. (Page 299.)

7. EVIDENCE—OPINION EVIDENCE—MATTERS OF COMMON KNOWLEDGE. Evidence that eight men is an insufficient number to carry a rail weighing 880 pounds, that twelve men were needed for so doing, and that rail could be more easily carried with tongs than by hand, is expert evidence on a matter of common knowledge, and hence improper. (Page 299.)

8. MASTER AND SERVANT—INJURY TO EMPLOYEE—NEGLIGENCE—SUFFICIENCY OF EVIDENCE. In an action against a railroad for injury to employee injured while lifting a rail when men at opposite end thereof dropped their end of the rail, evidence *held* insufficient to show that the railroad had failed to provide a sufficient number of men to carry such rail. (Page 299.)

On Application for Rehearing.

9. COMMERCE—"'INTERSTATE COMMERCE'"—REMOVAL OF RAILS FROM
TRACK. A railroad employee assisting in removing discarded rails
to scrap pile after other employees had detached rails from the track
is not engaged in interstate commerce within the federal Employ-
ers' Liability Act, although the men who detached rails worked
under same foreman and helped in removing rails to scrap pile.
(Page 301.)

Appeal from the District Court of Salt Lake County, Third
District; *Hon. H. M. Stephens,* Judge.

Action by Fernando Perez against the Union Pacific Rail-
road Company.

Judgment for defendant. Plaintiff appeals.

AFFIRMED.

*Willard Hanson, Shirley P. Jones* and *W. B. Hammond*
for appellant.

*Geo. H. Smith, J. V. Lyle* and *B. S. Crow* for respondent.

THURMAN, J.

Plaintiff's complaint, in effect, alleges that defendant is a
railroad corporation operating a railroad from Ogden, Utah,
through the state of Wyoming, to Omaha, Neb.; that it is,
and was at all times mentioned in the complaint; engaged in
interstate commerce; that plaintiff was at all such times in
the employment of defendant as a section hand on its road
and was likewise engaged in interstate commerce; that on
the 6th day of December, 1916, at Green River, Wyo., while
plaintiff, an employee of defendant, was so engaged, he re-
ceived the injuries complained of through the negligence of
other employees of the defendant. Plaintiff also complains
that the defendant negligently omitted to furnish a sufficient
number of men to properly perform the work in which he was
engaged, and that his injury was due to such negligence.

Defendant admits it was engaged in interstate commerce and that plaintiff was in its employment as a section hand at Green River, and was injured while in its employment. Defendant denies, however, that plaintiff was engaged in interstate commerce, or that he was injured through the negligence of defendant's other employees or through the negligence of defendant. It denies all the remaining allegations of the complaint, pleads contributory negligence of plaintiff, assumption of risk, and that if plaintiff's injury was due to the negligence of other employees of the defendant such employees were fellow servants of the plaintiff under the laws of Wyoming, which laws are pleaded and relied on by defendant. The case was tried to the court and a jury. At the close of the testimony introduced by plaintiff, defendant moved a nonsuit, which was granted. Judgment was entered dismissing the action. Plaintiff appeals.

In support of its motion for a nonsuit and the judgment of the court thereon, defendant contends there was no substantial evidence that defendant at the time of the injury complained of was engaged in interstate commerce as to the particular track in question, or that the plaintiff was engaged in interstate commerce as to the instrumentality connected with the injury. Defendant also insists that plaintiff assumed the risk of the particular injury complained of. Plaintiff controverts all of these contentions and insists that the evidence was sufficient to take the case to the jury. A careful consideration of the evidence and the facts deducible therefrom, together with reference to the law applicable thereto, is necessary to a just determination of the questions involved.

The evidence tends to show that plaintiff was one of a section gang engaged, at the time of the injury, in repairing one of the tracks connected with the main line in the railroad yard at Green River, Wyo. The gang consisted of thirty or forty men, with one boss or foreman, but the particular work of the men was divided. Some were employed in taking up old rails from the track and putting in new ones. The men so engaged laid the old rails at the side of the track on the right of way. The plaintiff, with seven other men under an assistant fore-

man, was engaged in removing these old rails from the point where they had been laid, placing them upon a pushcar and conveying them a distance of about thirty yards to the toolhouse, where they were deposited. From this point the old rails were to be conveyed to Cheyenne, Wyo. They were not to be used again in the road. The plaintiff and the seven men referred to took no part in taking up the old rails from the track or putting in new ones. Their particular business at the time of the injury was to remove the old rails from the side of the track, as above stated, and convey them to a scrap pile near the toolhouse. The customary method of removing the rails from the car and depositing them upon the scrap pile was substantially as follows: Half the number of men engaged would take hold of one end of the rail with their hands and the remainder would take hold of the other end in like manner. When all were ready, upon a given signal from the foreman, they would simultaneously let go. The rail would drop of its own weight to the designated place. On the occasion in question four of the men had hold of one end of the rail and four, including plaintiff, had hold of the other. Instead of the four men on the opposite end of the rail from the plaintiff waiting for the signal to drop, they, without any warning or signal whatever, dropped or threw the rail down, causing the other end, which plaintiff was holding, to strike his leg, inflicting a painful and perhaps serious injury.

There can be no question, under the facts stated, but that the injury received by plaintiff was due solely to the negligence of the men at the opposite end of the rail dropping it without waiting for the signal or giving some kind of warning to their fellow workmen at the other end of the rail. But whether this negligence is attributable to the defendant so as to render it liable for damages, under the circumstances, presents a question of law which it is our duty at this point to consider. The common law as to fellow servants and the liability of their employer for an injury caused to one employee by the negligence of another is in force in the state of Wyoming, and is controlling in this case as far as that point is concerned. The eight men handling the rail

above referred to, including the plaintiff, were undoubtedly
fellow servants, and under the law referred to the defendant
is not liable for the injury which the plaintiff sustained. If it
is liable at all, it must be by virtue of some other law appli-
cable to the facts of this particular case.

It is contended by the appellant that this case comes within
the provisions of the act of Congress known as the federal
Employers' Liability Act, which makes radical changes in the
common law, especially as to the fellow-servant doctrine
above referred to, which the act entirely abrogates and repeals.
The act of Congress, as far as material here, provides, in effect,
that common carriers by railroad, while engaged in interstate
commerce, shall be liable in damages to any person suffering
injury while he is employed by such carrier in such commerce,
resulting in whole or in part from the negligence of any of
the officers, agents, or employees of such carrier. 35 U. S.
Stat. at Large, 65.

Under this act, if at the time of the injury the defendant
and its employee, the plaintiff, were both engaged in inter-
state commerce, there would be no question in the mind of the
court but that defendant would be liable to respond in
damages for the plaintiff's injury. The act in such      2, 3
cases makes the carrier liable for the negligence of its
employees wherever injury is inflicted upon another em-
ployee, without regard to the question as to whether or not
they are fellow servants. But the controlling questions in
this case are: (1) Was the plaintiff engaged in interstate
commerce at the time of the injury? and (2) was the defend-
ant engaged in interstate commerce at the time of the injury
as to the particular place where the injury occurred and the
instrumentality employed? As we read the act, and the
authorities relating to this question, it does not follow because
a carrier may be generally engaged in interstate commerce
that it is therefore necessarily at all times so engaged in
respect to every place and every instrumentality employed in
its business. Neither does it follow that because an employee
is employed by a carrier generally engaged in interstate com-
merce therefore the employee is at all times employed in such

commerce. It all depends upon the particular business the employee is engaged in at the very time of the injury. If the particular work he is engaged in at the time of the injury is interstate commerce business, or so closely connected therewith as to become practically a part of it, then he is held to be engaged in interstate commerce under the act of Congress, but not otherwise. Interstate commerce of course, means commerce between two or more states, while intrastate commerce means commerce wholly within a single state.

In the case at bar the concrete questions at this time are: Was the plaintiff, at the time he was injured, employed in the doing of anything which tended to facilitate the movement of commerce from one state to another? Was the instrumentality upon which he was employed calculated,     4 in any manner, directly to contribute to or be in aid of commerce between two or more states? In the light of the adjudicated cases construing the act of Congress, as we read them, these questions must be answered in the negative. If the plaintiff had been engaged in repairing a track admitted or proven to be an interstate track, and what he was doing tended to facilitate transportation from one state to another, in our judgment, he would have been engaged in interstate commerce. But here he was not engaged in repairing the track rendering it more capable of carrying commerce. If he and his fellow workmen carrying the rail had not removed it at all from the side of the track where it had been laid by those repairing the track, transportation on the road, so far as the record discloses, would have been just as effectual and commerce could have been carried on without interruption. The old rails might have lain upon the side of the track for an indefinite length of time without inconvenience to interstate travel or transportation. Cases analogous to this have frequently come before the courts, and have generally, if not always, been determined in accordance with the views here expressed.

In *Pierson* v. *New York, S. & W. R. Co.*, 83 N. J. Law, 661, 85 Atl. 233, defendant was engaged in interstate commerce. Defendant purchased certain rails, and after they arrived at

Appeal from Third District

their destination it caused them to be removed to the place where they were to be laid. Defendant employed plaintiff and other servants to unload them from the cars. Plaintiff was injured by one of the rails dropping on his foot through the negligence of his fellow servants. It was held that such service was not work done in interstate commerce. That case is stronger against the plaintiff's contention here than the writer believes the law to be, but it illustrates the length to which some courts have gone in restricting the application of the federal act upon which appellant relies.

In *Ill. Cent. R. Co.* v. *Kelly*, 167 Ky. 745, 181 S. W. 375, the first paragraph of the syllabus reads:

"That plaintiff, when injured, was assisting in loading old unused rails upon a flat car for the purpose of storing them elsewhere or disposing of them, does not show that the plaintiff was injured while engaged in interstate commerce."

In that case the court makes the distinction between the work of loading and removing from the track old rails that had been used and discarded and the work of unloading rails that were to be used in repairing the road. The latter may be work in interstate commerce; the former not.

In *Tsmura v. Great Northern R. Co.*, 58 Wash. 316, 108 Pac. 774, plaintiff was injured while loading rails. The conduct of his fellow servants assisting in carrying the rails was very similar to the negligence complained of in the present case. They attempted to throw the rail without waiting for the signal or giving warning. The court reviews the facts, which were stronger for plaintiff than are the facts in this case for appellant, and concludes that plaintiff was not engaged in interstate commerce.

In *M., K. & T. R. Co. of Texas* v. *Watson* (Tex. Civ. App.) 195 S. W. 1177, plaintiff was helping to stack, on the right of way, railroad ties which had been unloaded that morning from cars and thrown by the side of the track. Plaintiff took hold of one end of a tie; the assistant foreman the other. The assistant foreman, without notice or warning, dropped his end of the tie before the plaintiff straightened up, whereby plaintiff was injured. In that case the defendant company

pleaded that the work being done by plaintiff was connected with interstate commerce, and that the liability of the defendant should be determined by the act of Congress applying to the situation. The ties were being put into the stack for future use, and were afterwards used on a branch of the road shown to be connected with the interstate line. Notwithstanding this the court denied the plea of the defendant, and held that plaintiff, when injured, was not engaged in interstate commerce.

In *Cincinnati, N. O & T. P. R. Co.* v. *Hansford*, 173 Ky. 126, 190 S. W. 690, we have a case quite similar in many respects to the present case. The first paragraph of the syllabi reflects the opinion of the court on the point under review:

"'Federal Employers' Liability Act, April 22, 1908, c. 149, 35 Stat. 65, * * * does not necessarily apply to a person in all details of his employment, as he may have duties including both interstate and intrastate commerce; and where plaintiff was regularly engaged in working on a section replacing old rails with new ones, etc., but at the time of the injury was merely loading old rails lying on the right of way, he was not, at that time, 'engaged in interstate commerce.'"

The case just cited also makes the distinction between repair work on the road, such as taking out old rails and putting in new ones, and merely removing old rails that had at one time been used in the track and laid out on the right of way.

The foregoing cases from state courts of last resort have been cited mainly because of their close analogy to the facts in the present case. Decisions of the federal courts are, of course, more authoritative, since we are now dealing with a federal question. Appellant, in support of his contention that the case comes within the federal act, cites *San Pedro, L. A. & S. L. R. R. Co.* v. *Davide*, 210 Fed. 870, 127 C. C. A. 454; *Pedersen* v. *Delaware, etc., R. R. Co.*, 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153; *Central R. R. Co.* v. *Colasurdo*, 192 Fed. 901, 113 C. C. A. 379; *New York Central Co.* v. *Carr*, 238 U. S. 260, 35 Sup. Ct. 780, 59 L. Ed. 1298. Appellant also cites *Grow* v. *Railroad Co.*, 44 Utah, 160, 138 Pac. 398, Ann. Cas. 1915B, 481, and *D. & R. G. R. R. Co.* v. *Da Vella* (Colo.) 165 Pac. 254.

*San Pedro, L. A. & S. R. R. Co.* v. *Davide,* supra, was an action for an injury sustained by a section hand while he and other employees were returning to their camp on a number of hand cars. The employees on the car immediately preceding the plaintiff's car negligently slackened their speed without warning, thus causing a collision with the plaintiff's car whereby plaintiff was injured. Plaintiff's work consisted in ballasting the main track, which was interstate. It was held the case came within the federal act. It was also held that his services continued while returning to his camp where the car was to be removed from the track so as to leave the road open for other trains.

*Pedersen* v. *Delaware, etc., R. R. Co.,* supra, is one of the earliest cases decided by the United States Supreme Court construing the federal act in question. It is generally cited as a leading case, notwithstanding the tendency of more recent decisions of that court has been to restrict rather than enlarge the application of the act to cases of death or injury resulting from accident. In the Pedersen Case the plaintiff was engaged in repairing a bridge forming a part of an interstate track. While carrying bolts to the bridge to be used in its repair he was injured through the negligence of other employees of the defendant company. Inasmuch as it was necessary to keep the bridge in repair in order that interstate commerce might be carried on, and inasmuch as it was necessary to carry the bolts to the bridge so that they might be used in making the necessary repairs, the Supreme Court held he was engaged in interstate commerce.

In *Central R. R. Co.* v. *Colasurdo,* supra, respondent, a track repairer in the employment of the railroad company, was directed to repair a switch late at night in its terminal, and he was struck and injured by an unlighted car. There was other negligence, also, attributable to the other employees of the defendant. Interstate as well as intrastate commerce was transported over the switch. The court held plaintiff was engaged in interstate commerce.

*New York Cent. & Hudson River R. R. Co.* v. *Carr,* 238 U. S. 260, 35 Sup. Ct. 780, 59 L. Ed. 1298. This case demonstrates

the facility with which an employee of a carrier may pass from intrastate to interstate business, rendering it necessary to decide each case in the light of its particular facts.

The distinction between the foregoing cases relied on by appellant and the present case, even upon a casual reading, is clearly apparent. In every one of them the work being done at the time of the injury was either work directly in interstate commerce, or so closely connected with it as to be practically a part of it, and this, in all cases, seems to be the crucial test. In this case, as we have shown, the work of moving the old rails from the right of way, never to be used again in construction or repair, had no connection whatever with interstate commerce as defined in the federal act. The following federal court cases cited by respondent in one form or another define the test that must be applied in all cases where the federal act is invoked: *Hudson & M. R. Co.* v. *Iorio,* 239 Fed. 855, 152 C. C. A. 641; *New York Cent. & H. R. Ry. Co.* v. *Carr,* supra; *Ill. Cent. R. Co.* v. *Behrens' Adm'r,* 233 U. S. 473, 34 Sup. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163; *Minneapolis & St. Louis R. Co.* v. *Winters,* 242 U. S. 353, 37 Sup. Ct. 170, 61 L. Ed. 358; *Erie R. Co.* v. *Welsh,* 242 U. S. 303, 37 Sup. Ct. 116, 61 L. Ed. 319; *Raymond* v. *Chicago, M. & St. P. R. Co.,* 243 U. S. 43, 37 Sup. Ct. 268, 61 L. Ed. 583; *Shanks* v. *Delaware, etc., R. Co.,* 239 U. S. 556, 36 Sup. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797; *C., B. & Q. R. Co.* v. *Harrington,* 241 U. S. 177, 36 Sup. Ct. 517, 60 L. Ed. 941. Many other cases have been examined and might be cited to the same effect but the foregoing will suffice.

As before stated the tendency of recent cases has been rather to restrict than to enlarge the doctrine announced in the Pedersen Case, supra. We believe this is manifest from an examination of the cases last cited. The refinement sometimes resorted to by some of the courts in applying the provisions of the act to the facts of a particular case is extremely subtle, and oftentimes appears almost too technical for the attainment of substantial justice. But when we remember that Congress has no power to deal with the question except under its power to regulate interstate commerce, the utmost precision in applying the provisions of the act is perhaps justifiable.

The first act passed by Congress relating to this subject was held by the United States Supreme Court to be invalid because it was too broad in its scope. *Employers' Liability Cases,* 207 U. S. 463, 28 Sup. Ct. 141, 52 L. Ed. 297. It undertook to regulate the liability of masters to all servants without regard to the fact that many of them might be engaged in the discharge of duties which constituted no part of, or had no connection with, interstate commerce. The subsequent act now in force and on which appellant relies limits its application solely to cases in which both the carrier and the injured employee are engaged in interstate commerce as to the instrumentality employed at the time of the injury. See specially *Pierson* v. *New York, S. & W. R. Co.,* and *Tsmura* v. *Great Northern R. Co.,* supra.

Appellant also refers us to two state court decisions which we have not yet considered. *D. & R. G. R. Co.* v. *Da Vella,* supra, was a case in which the plaintiff, an employee of defendant, was injured while inspecting and repairing an interstate track. In connection with this work he was also engaged in removing old rails which were at the side of the track and which the court was of the opinion had been taken from the track. The very fact that it was conceded that defendant was engaged in interstate commerce and that the track was an interstate track, together with the fact that plaintiff was injured while repairing it, distinguishes that from the present case.

Finally, appellant refers us to *Grow* v. *O. S. L. R. Co.,* 44 Utah, 160, 138 Pac. 398, Ann. Cas. 1915B, 481. The opinion in that case was rendered by a divided court; the majority holding that the case came within the provisions of the federal act. The defendant was operating a railroad from Huntington, Or., to Salt Lake City, Utah. It was engaged in installing automatic block signals on its main line. It commenced at both ends of the line and worked towards the center, and at the time of the injury to plaintiff's intestate it had completed the work except about forty-five miles in the state of Idaho. Deceased was employed with other workmen in installing the signals within this forty-five miles. They had quit work in

time to arrive at their lodging place at six o'clock, which was the regular quitting time. The foreman and deceased were riding on a gas motorcycle operated on the track when they were run down by a passenger train running seventy miles an hour, resulting in the death of deceased. Many questions were involved on the appeal to this court, but the only one material here is, Was the deceased engaged in interstate commerce at the time of the collision? That the road was interstate was beyond dispute, but at the point where the injury occurred the block signal system had not been installed and had never been used. Therefore it was contended by the dissenting justice that the deceased was not engaged in interstate commerce at the time of the injury. The majority of the court held to the contrary. The point upon which the court was divided was exceedingly close. Whether the majority opinion would stand today in the light of more recent opinions by the United States Supreme Court is at least a debatable question. See *Raymond* v. *Chicago, Milwaukee & St. Paul R. Co.,* and *Hudson & M. R. Co.* v. *Iorio,* supra. But that is aside from the question. Assuming that the majority opinion states the law correctly, we fail to see wherein it supports appellant's contention in the present case. There was at least, in the Grow Case, the probability that the work the deceased was doing when he was killed would at some time be utilized for interstate commerce, at least it was intended to be so used by the defendant who was having the system installed. In this respect the case is completely distinguished from the case at bar.

In view of the foregoing we feel compelled to find that appellant was not engaged in interstate commerce at the time he received the injury complained of. It therefore seems unnecessary to determine whether the track near which he was working, and from which the old rails had been taken, was an interstate track. As to that the testimony is very confusing and unsatisfactory. But as it would accomplish no useful purpose in the case, and as it is not probable if the case is tried again that appellant will rely upon such evidence alone to establish the interstate character of the track, we decline to give the question further consideration.

There remains but one question to be determined: Did the plaintiff make a case for the jury at common law? The appellant alleged negligence of his coemployees at the opposite end of the rail as the cause of his injury. We have already shown that under the common law which is in force in Wyoming his coemployees were fellow servants for whose negligence the defendant was not responsible. We have also shown that while the negligence of fellow servants is not a defense under the federal Employers' Liability Act this case does not come within the provisions of the act. But plaintiff also alleges in his complaint that the defendant negligently failed and omitted to furnish a sufficient number of men to do the work in which he was engaged; that by reason of said negligence plaintiff's coemployees were unable to handle said rail and hold the same because of its weight, and were compelled to throw the end they were holding to the ground, thereby causing the injury. This cause of action is available at common law, and, under the circumstances, is available in this action. *Grow* v. *R. R. Co.*, supra.

The question, therefore, is, Was there substantial evidence introduced by plaintiff, at the trial of the case, in support of this allegation? Was there evidence introduced that would sustain a verdict for the plaintiff if the case had been submitted to the jury? This is the test. Appellant did not argue this question; no authorities are cited; we are not enlightened by any process of reasoning or logical deduction. All that appellant says upon this question, in effect, is that eight men are not sufficient; that it required twelve men with tongs, and carrying with tongs was easier than carrying it by hand. The testimony introduced by plaintiff on this point was exceedingly meager and of questionable character—questionable in that it was of the nature of expert testimony on a matter of common knowledge among all men of ordinary intelligence moving in the ordinary walks of life. Rogers' Expert Testimony (2d Ed.) page 25 et seq.; 17 Cyc. 25 et seq. Plaintiff's witness on this point, although he had had some experience in railroad work as a section hand, had never carried rails by hand. He stated that eight men

might be sufficient to carry the rail on a level floor, and later expressly stated that he thought eight men were insufficient. The rail in question weighed 880 pounds—110 pounds to the man. Witness thought a man could carry 110 pounds if the rail was where a man could get hold of it. The witness, never having carried rails by hand, knew no more about it than the jurors themselves. The testimony was not enlightening; it was not probative in any sense. The character of the ground was not shown. It might have been a smooth, level surface. The kind of men witness had in mind as to strength and capacity is not stated. Some men can lift twice as much as others. The men themselves who carried the rail were not called upon to testify as to its weight. Neither were their depositions taken. The plaintiff testified he did not know why they dropped the rail. Neither the foreman nor the assistant foreman in charge of the work, acquainted with the particular rail in question and the condition of the ground, were called upon to testify concerning them, and while there may have been reasons known to appellant why these men were not called, or their depositions taken, nevertheless, courts of justice cannot be expected to determine a question of fact upon its merits in the absence of substantial evidence. It would be a perversion of justice to transfer property or money from the hands of one man to the hands of another solely upon testimony of this character. If the case had been submitted to the jury on this evidence alone, and it had returned a verdict for plaintiff, on appeal to this court we would feel compelled to reverse the judgment. There would be no substantial evidence to sustain the verdict. This, then, is the situation, to say nothing of the assumption of risk relied on by respondent, which, however, is a question we need not consider.

The evidence was wholly insufficient upon all the grounds relied on by appellant. The court did not err in granting the nonsuit and dismissing the action.

For the foregoing reasons the judgment of the trial court must be, and is, affirmed. Respondent to recover costs.

FRICK, C. J., and McCARTY, CORFMAN, and GIDEON, JJ., concur.

On Application for Rehearing.

THURMAN, J.

Appellant has filed an application for a rehearing, and calls our attention to the fact that the statement of facts upon which the opinion was based does not in certain respects accurately reflect the record. The opinion handed down assumes that the gang of eight men moving old rails was in charge of an assistant foreman and that none of this gang had anything to do with detaching the old rail from the track or putting the new one in its place. It is claimed by appellant that the eight men were in fact in charge of the principal foreman and that two of the eight men detached the rail from the track, laid it to one side, and then assisted the other six men in moving it to the place where it was deposited. While the record is somewhat confusing, a careful examination of it justifies the criticism indulged in by appellant, and we cheerfully make the correction; not that we consider the discrepancy material, but facts upon which an opinion is based should be stated, as far as possible, with scrupulous regard for precision. A mistake in such case is practically irremediable after the opinion is published.

Of the eight men engaged in removing the old rail two were Greeks and six were Mexicans. The plaintiff was one of the Mexicans. The record shows that the Greeks understood the business of detaching the rails from the track and substituting new rails therefor, and they alone participated in that part of the business. The Mexicans did not understand that work, and consequently, on this occasion, were engaged solely in removing the old rail from the side of the track where it had been laid by the Greeks. These facts, which clearly appear from the record, tend strongly to emphasize the position assumed in our former opinion, that the case does not come within the terms of the federal statute. Assuming that the track in question was an interstate track, still the plaintiff and the other Mexicans were not engaged in repairing it, for detaching old rails from the track and substituting new ones therefor seems, from

plaintiff's own testimony, to have been a part of the business which they did not understand. When asked the question what he was doing while the Greeks took the old rail out the plaintiff, referring to himself and the other Mexicans, answered: "We were there as to what the boss wanted us for. We didn't understand the work and we stood there waiting." Hence, on this particular occasion, it seems the boss wanted them to assist in removing the old rail from the side of the track where the Greeks laid it and that is what they were doing when the injury occurred. It does not matter what they might be required to do next or what they had been doing before. The question is, What was their business and what were the instrumentalities employed when the injury occurred?

Appellant's brief, filed with his application, cites *N. Y. Central R. R. Co.* v. *Carr*, 238 U. S. 260, 35 Sup. Ct. 780, 59 L. Ed. 1298, the first syllabus of which reads as follows:

"During the same day railroad employees often and rapidly pass from intrastate to interstate employment and the courts are constantly called upon to decide close questions as to the dividing line between the two classes of employment. Each case must be decided in the light of its particular facts."

This illustrates the doctrine underlying this class of cases. It is sustained by every decision rendered by the United States Supreme Court touching this question since the passage of the present federal law. As we read the cases, it makes no difference whether an employee is in charge of a principal foreman or an assistant foreman, or whether a part of a certain gang of men under one boss is engaged in interstate business and part in intrastate business at the same time and place. Indeed, in our opinion, it would not alter the case if one or more of the gang should part of the time be engaged in interstate business and part of the time in intrastate business, changing rapidly from one to the other. The crucial test in such cases is, Was he engaged in interstate business at the particular time of the injury?

In attempting to quote from the opinion of the court in the *Carr Case,* supra, appellant inadvertently, we suppose, makes

a material omission.   The language of the court is as follows:

"Each case must be decided in the light of the particular facts, with a view of determining whether at the time of the injury, the employee ·is engaged in interstate business, or in an act which is so directly and immediately connected with such business as substantially to form a part or a necessary incident thereof."

The words "a necessary" near the close of the quotation were omitted in appellant's attempted quotation and in our opinion without these words the court's opinion is not properly reflected.   A mere incident of a condition is one thing; a necessary incident is another.   The distinction is important. The removal of old rails from the side of a track from which they have been detached in the course of repairing the track may probably be an incident of the repairing, but it certainly is not a necessary incident, for the repairing of the track is complete when the old rail is detached and removed from the track and a new rail substituted therefor.   Transportation of freight, passengers, and mail can proceed thereon and the business of commerce transacted conveniently and without interruption so far as the old rail is concerned.   Whether it is removed or not is wholly immaterial, as its removal is in no sense a necessary incident to the repairing of the track.   A brief statement of the facts in the Carr Case, supra, will demonstrate the force and effect of what is a "necessary incident" in the opinion of that court.   A brakeman was employed on a train carrying both interstate and intrastate cars. Two intrastate cars were at the head of the train next to the engine and had to be cut out at the station where the injury occurred.   On arriving at the station the engine and two cars were uncoupled from the train, pulled by the engine down the track and backed into a siding.   While attempting to set the brakes of the cars to prevent them from rolling back upon the main track when uncoupled from the engine, through the negligence of another brakeman, plaintiff was injured.   The contention was made that the two cars which were intrastate cars, being segregated and cut out, were withdrawn from their interstate connection, and therefore the case did not come

within the federal law. The court, however, held, in effect, that inasmuch as it was necessary to cut out the intrastate cars and uncouple them from the engine in order that the engine might return to the interstate train and proceed with it, with plaintiff and other interstate employees, on its interstate journey, the case was therefore within the act. This statement of the facts of that case, without further comment, is all that is necessary to distinguish it from the case at bar and to emphasize the court's meaning of "a necessary incident."

Since writing the above, appellant has referred us to two other cases, *Louisville & N. R. Co.* v. *Parker*, 242 U. S. 13, 37 Sup. Ct. 4, 61 L. Ed. 119; *Erie R. Co.* v. *Winfield*, 244 U. S. 170, 37 Sup. Ct. 556, 61 L. Ed. 1057. They afford no support to appellant's contention.

In the present case whether or not the Greeks, who part of the time were engaged in repairing the track and part of the time were assisting in removing the old rail from the side of the track, would have had a cause of action under the federal law if they had been injured while removing the old rail is not now before the court. It is simply a moot question presented by appellant as illustrating his views, and one which even he does not attempt to answer, except by a bald conclusion unsupported by authority. It is sufficient to say that in the judgment of this court the plaintiff was not engaged in interstate commrce at the time of his injury, and hence his case does not come within the provisions of the federal law upon which he relies.

We have no reason to modify our former opinion except in respect to the statement of facts as hereinbefore stated.

The petition for rehearing is denied.

FRICK, C. J., and McCARTY, CORFMAN, and GIDEON, JJ., concur.